ANTHONY MACCHIA, BY ARSENIO MACCHIA, HIS NEXT FRIEND, AND ARSENIO MACCHIA, PLAINTIFFS-AP-PELLANTS, v. THE PENNSYLVANIA RAILROAD COM-PANY, DEFENDANT-RESPONDENT.

Submitted May 27, 1932—Decided October 17, 1932.

For the plaintiffs-appellants, *Joseph Rosthal* (*William L. Rae,* of counsel).

For the defendant-respondent, *Wall, Haight, Carey & Harlpence* (*William W. Shaw,* of counsel).

The opinion of the court was delivered by

CASE, J. This is an appeal from a judgment of the Supreme Court reversing a judgment of money damages for the plaintiff in the Hudson County Court of Common Pleas. The action, under the Federal Employers' Liability act, was for personal injuries received by the plaintiff while in the employ of and, as alleged in the complaint, because of the negligence of the defendant company.

Giving the testimony the version most favorable to the plaintiff, the facts may be stated thus: Plaintiff was employed by the defendant company on night duty at its sand house in the defendant's Greenville yard. His work consisted of the drying of sand and placing it in the storage tanks for use in supplying engines. Because engines of interstate, as well as intrastate, traffic were replenished from this supply, the work was in the classification of interstate commerce. The sand house was so situated that a direct means of approach from the yard entrance was over certain of defendant's tracks. The tracks were in constant service for the purpose of drawing incoming freight trains up an incline to a "hump" from which the break-up was made and the several cars were shunted to their proper yard locations. A nearby tunnel had been constructed by the defendant under the tracks for the safe use of its employes in passing to and fro, and signs, printed in the English and in the Polish language, warned the employes not to cross the tracks. There is evidence, however, that plaintiff did not know about the tunnel, had not seen the signs and had not been directly warned not to cross the tracks. On the contrary, plaintiff did regularly cross the tracks in going to and from his work and in so doing did that which others of defendant's employes did when the tracks were clear. On November 4th, 1928, a dark, foggy, rainy

night, plaintiff, entering the yard on his way to report for duty, found his route blocked by a standing freight train. There is no contention that the train was wrongfully there or that it remained for a considerable period. The plaintiff listened for a signal indicating that the train was about to move and heard none. He did nothing else to inform himself regarding probable movements of the train. He did not know, and made no serious effort to discern, how far the train extended in either direction, how far distant the engine was or whether in fact there was an engine. He informed no one that he was boarding the train. He neither saw nor sought a member of the train crew. He climbed up between two cars, and as he was stepping his way along the "sill" at the end of one of the cars, there was a motion of the car caused by the starting of the train. Plaintiff's foot slipped from the wet "sill," was caught by the coupling and received an injury that caused the amputation of two toes.

That the plaintiff's employment was in interstate commerce; that the passing from the yard entrance on defendant's private property to the sand house, either through the tunnel provided for that purpose or by the crossing of clear tracks in accordance with the custom next mentioned, was within the line of his employment and that a custom did prevail on the part of the defendant's employes of crossing over the intervening tracks when the same were clear of trains may be assumed. But plaintiff, to sustain his right of action, must, of course, prove some act of negligence by the defendant. *McGarry* v. *Central Railroad of New Jersey,* 105 *N. J. L.* 590. He charges that the starting of the train without the giving of a preliminary warning was such an act and, in support, relies upon the proof that the defendant had established a general practice of giving warning, for the benefit of anyone within hearing, either by bell, or whistle or otherwise, of the intended moving of trains in the night-time. Along with the stating of this contention it should be said that there is no proof of a custom by defendant's employes or others of climbing over the cars of an intercepting train, and no proof of actual or constructive knowledge on the part of the defendant

of any instances of such an act by anyone. Indeed, there is nothing in the testimony to indicate that anyone had ever done so except the plaintiff himself. A posted rule of the defendant company prohibited the act. The plaintiff knew the likelihood of train movement and the danger attendant thereon, though he relied upon receiving a warning: "*Q.* And didn't you know that that was dangerous [viz., crossing over a freight train]? *A.* No, sir; I knew it was dangerous providing that there was not a brakeman there giving the signal not to go through. *Q.* You knew that the train was liable to start at any time? *A.* Yes, when there was a warning sound that the train would start. *Q.* But the warning might have been given or the bell might have rung without your hearing it? *A.* I always listened to hear it." The hour was ten-forty. Plaintiff, at eleven o'clock, was due at his place of employment approximately three hundred feet distant. There was no emergency. Plaintiff had no duties on or about the cars or the trains; in this respect, as well as in fact that the plaintiff was on the compacted train and not in the act of passing through an open way, the case is distinguished from *McNally* v. *Pennsylvania Railroad Co.*, 88 *N. J. L.* 277. Plaintiff had neither the express nor the implied permission of the defendant to climb over the train. He went where he had no right to go, and except for that he would not have been injured. He was there without the defendant's knowledge. He was neither an invitee or a licensee. We think that his status while on the train was that of a trespasser and that he did not establish a system of warning upon which he, in that capacity, could rely. So long as he occupied that status, no duty was owing to him from the defendant except that the latter should refrain from doing him willful or wanton injury; and of such an act there is no evidence. Citations of the law applicable to persons, whether employes or not, passing on the ground level, either between or in front of or in back of or even underneath railroad cars are scarcely in point. Whatever authority the plaintiff had for ground passage, he had no authority to board the train and, at defendant's risk, to expose himself to the known dan-

gers of that undertaking. No duty owed by the defendant to the plaintiff is shown to have been violated.

The defendant's grounds of appeal from the judgment of the trial court were three in number, namely, the refusal of a motion for nonsuit, the refusal to direct a verdict and the refusal to charge the following request: "When the plaintiff climbed up between the freight cars to cross to the other side of the train he became a trespasser, and the defendant was under no duty to warn him of the starting of the train." We consider that under the facts of the case there was error in each of these rulings and that the judgment of reversal granted in the Supreme Court should be affirmed.

*For affirmance*—Trenchard, Parker, Case, Brogan, Van Buskirk, Kays, Dear, Wells, JJ. 8.

*For reversal*—Donges, Kerney, JJ. 2.